We'll proceed to the next case on our argument docket. Thank you both. The next case on our docket is United States v. Gordon, but counsel can take a little time getting to the stand, and then we'll hear from Appellant first. The charge is the United States. Shall I begin? If you wait one minute, that's going to get picked up on the recording. Are we set? Counsel, please proceed. Thank you, Your Honor. My name is David Ness with the Federal Defenders of Montana. On behalf of the Appellant, Brandon Gordon. As the Court is aware, the argument today actually involves two separate appeals. I think I'd like to first start on the second or successive issue. It seems to me like that's the more complicated issue that needs to be resolved. The big problem you've got is the recent issuance of the Duarte decision, the in-bank decision upholding the constitutionality of 922G. You know, Judge, I guess I would disagree with that. I don't have sight on the tip of my tongue right now, but I believe both this Court and other circuit courts of appeals have basically held that when you're looking at that second provision in 2255H, that the Court isn't necessarily supposed to go into looking at the actual merits of the claim that's to be raised. They look at the procedural issues, and that's whether or not it's a new rule of constitutional law that's been retroactively applicable by this Supreme Court. But the rule prior to Duarte was that it was constitutional. So Duarte basically overturned the three-judge panel decision that recognized it, and that decision has now been vacated. So there has been no change in the law. Well, I agree. If he's allowed to bring his Bruin claim in the Ninth Circuit, he will lose. Right. So why wouldn't that then lead the Court to conclude, which I guess what I'm saying is I agree there may have been an error procedurally in not allowing the amendment, but as a practical matter, we're going to end up in exactly the same place in light of Duarte. And so why shouldn't we affirm on the alternative ground that any amendment to the judgment would have been futile? Well, we do have the United States Supreme Court, Your Honor, and there is a split in the circuits on this issue. You're kind of losing me. Oh. Because I think the issues are getting kind of conflated, and it's almost – you know, what I'm going to call what Judge Thomas is referring to is sort of amendment would be futile. That's what he's, I think, talking about when we look at what happened in Duarte. And I think you're suggesting, but I want to make sure that I'm following you, because I think you two are speaking in shorthand or code a little bit, is that there's a procedural issue, an antecedent procedural issue about his ability to amend his complaint. And I think that's what Judge Thomas was just referring to, right? That there was a – by operation of Rule 59 that there – this should not be deemed a second or successive. And I certainly appreciate that's a separate point, but what's your best argument that we should go ahead and decide that if – what I'm going to call, you know, if amendment would be futile, if the underlying claim is doomed? Well, I guess I'd fall back on what I just told Judge Tolman. I agree. It's doomed in front of this court. Okay, so if that's your concession, because you can't distinguish from Duarte, okay, then why did we reach the procedural issue? Well, you could, I guess. You know, this Court certified the issue. I think it is important to sort out the certified – the procedural issue. Because it needs to be answered? Because is that – so would you have us resolve – we've done this a lot this week. Ask counsel, how would you have us draft your dream ruling? Because you've conceded that the Duarte issue is now foreclosed, it sounds like what you're suggesting is that there's a procedural issue that needs to be decided. You're encouraging us to decide it even if we then say, you know, but in this case counsel's conceded that the Duarte issue is – the Bruin issue is not viable. I think that's correct, yes. I think that the procedural issue here is kind of top and foremost. And that was the issue that was certified. Okay, so what's your best argument that the issue needs – we did certify it. We've identified that that was an important issue. What's your best argument that we should take it up here rather than waiting for another case where it might matter? It's been certified here. I think it's a good time – I think it's a good time to try to answer this question given the dependency of the Lumpkin case as well. You know, once Lumpkin comes out then there may be other questions, you know, involving when a 2255 petition is an SOS petition, when it can be amended, things of that nature. So I think that this issue is here, although it's different than – you know, Lumpkin's a little cleaner. There was no Rule 59e motion interposed in the middle of the litigation. But I think that this case together with the United States Supreme Court and Lumpkin I think will add a lot of guidance to the courts under these circumstances. When is an application for relief second or successive? When is it merely second in time? So you would like to see an opinion that says when a Rule 59e motion is filed, the mere filing of the motion renders the original judgment now non-final until the court resolves the Rule 59e motion. And in this case, the court could resolve it by refusing to permit the amendment because to do so would be futile. Once that is disposed of, the judgment returns to a final judgment and then anything after that point would be a second or successive petition. I think so. Relying on Bannister, you know, what we're saying is that the judgment that had originally been filed had been suspended. It was no longer final. Right. We're saying the same thing. Okay. So yes. I would say that Mr. Gordon's second in time petition raising his Bruin claim should have been treated as an amendment, as this court said, in Goodrum, in Beatty, in Woods, in Cary. All of those, you know, say that when there's an actual application that's still pending, if someone comes along and files a second application, it's just treated as an amendment. But why couldn't the court then take the next step and say, but as so construed, this motion is denied because it is moot in light of the in-bank decision in Duarte. There is no effective relief the court can grant in light of that in-bank decision. No, but again, Judge, I guess I just, and my friend and I were talking earlier, you know, about these gun cases, and maybe I'm somewhat optimistic, but I think that it's moot before this court, but the issue hasn't been fully decided. Excuse me. When you say the issue right there, are you talking about the Bruin issue, or are you talking about suspending the entry of the judgment? The Bruin issue, I think, is how I was answering Judge Talmadge. Now I'm confused, because I understood you concede a minute ago that in this case relief couldn't be granted on the Bruin issue. Oh, well, I don't think, obviously this court is not going to do that, because this court has an out-and-out decision. So yes, moot is the wrong word. So you're just holding out hope, you mean for, I'm not trying to give you a bad time, I'm trying to understand, I thought I understood your concession, but you're indicating that theoretically it would be possible if something were to flip on Supreme Court review? Is that what you're saying? Could be, possibly, yes. Am I missing? Is there any other option here? They're not trick questions. I really am trying to understand yours. No, no. Okay, so your concession is just that it's foreclosed in this circuit, but you want to preserve that for Supreme Court review? That would be correct, yes. All right, so back to my effort to understand how you would have this opinion written. You think there's an important rule that you'd like to see published, publication on, that has to do with the procedural issue, that the Rule 59 suspends imposition of finality for purposes of whether a petition is going to be amended or SOS, right? Correct, yes. And then in this case, you've conceded that relief is foreclosed on the Bruin issue unless the Supreme Court changes something. Right. It would allow Mr. Gordon to effectively amend his original petition, and this Court will deny it, and then I would presume he would go to the Supreme Court. I see. Thank you for the clarification. Right. And then I guess, unless there's any other questions regarding that particular issue, I'd just move on to the second two issues that are, I think, simpler. The first issue is whether or not the Court wrongfully denied Mr. Gordon's Sixth Amendment plea agreement claim, and I think that's adequately spelled out in the briefs. What I would say, although I have to concede there's certainly evidence on the other side that he hadn't been misinformed, but there is that statement that counsel made during the sentencing hearing, where he specifically states he could have gotten 24 days. I don't think that Mr. Gordon's argument is so conclusively wrong, that he should have been denied further proceedings, whether in the form of some sort of discovery, or ideally some sort of very short evidentiary claim. But we've upheld variances as great as 60 months, and found no ineffective assistance of counsel. And we don't have that great a gap here, do we? We have about 60 months. But we've upheld much longer sentences, differences than 60 months, is what I meant to say. You have, and that's a problem. And we've said that wasn't an effective assistance with regard to potential sentencing penalties. And I have arguments against that, but I don't think that the panel, obviously, can overrule those. It's those pesky precedents. You guys are just terrible to me. I will note, however, that there, again, is a split in the circuits on this. I think the Fifth Circuit doesn't take quite as hard a line as the Ninth Circuit does. And, I mean, it just seems to me that if sensing prognostication is so wrong, I mean, some of the cases cited in the government's brief, if you're talking 10 years, you know, life as opposed to 30 years, that those should be analyzed under the performance prong of Strickland. And I would just respectfully submit that even though this panel can't do it, that the Ninth Circuit should reevaluate that issue. Counsel, on the Strickland ineffective assistance claim, could you just review for me your position on prejudice? Assuming there was some deficiency, what's your prejudice position? I think prejudice is one day. I take that from the Glover decision. I mean, one day in jail is too much. It's too prejudicial. So if we're looking at, you know, the Ninth Circuit cases deal with the performance prong, the Glover case dealt with the prejudice prong. But I think even one day in jail, I would argue, is sufficient prejudice. What do we do with the fact that at the initial appearance, at the arraignment, and at sentencing, the defendant was advised of the statutory maxima? But Judge... I guess I should add the plea as well. Right. You know, federal statutes, you can look at the fraud statutes, for example. I think some of those carry, you know, maximums of 30 years or something. But, you know, when you run the guidelines, which are kind of the lodestar of sentencing, right? That's what trial judges are supposed to... But they're not mandatory. They are not mandatory. And we go out of our way to make sure the defendant understands they're not mandatory. Right. But, you know, if the guidelines on a crime come out 12 to 18 months, but there's a maximum of 30 years and someone gets 30 years, I'm not so sure that when counsel meets with the client and says, I've run your guidelines, you're going to get 12 to 18 months. Turns out he's wrong, he or she is wrong, and the client gets 30 years. Would your position be the same if the court was careful in the plea colloquy of pointing out that, you know, the guidelines are not binding on the court, the court is free to sentence outside the guideline range, and the statute provides for a maximum of 20 years? You don't think that would be sufficient to cure the problem? I would argue no, Judge. I just, you know, I think, and I don't do a whole lot of trial work anymore, but, you know, I would show my clients the guidelines, tell them courts go with the guidelines almost all the time, and this is probably what you can expect. I can't be certain. Now, if it goes up, you know, a little bit, maybe not, but when you're talking about going up to the statutory maximum and that's not a problem with counsel's performance, yes, I would disagree with that, I think. And then just the other issue has to do with whether or not the, you know, what other issues should have been considered with regard to Mr. Gordon's claim number one, and I think my only difference with the government is I think that they identified only the motion to suppress that should have been considered along with the first claim. I'm looking at it more as what happened, everything that happened pre-trial. So I would include claim two, which is the defective indictment claim, claim three, the failing to prepare by interviewing witnesses and whatnot, as well as the stipulation that counsel entered into along with the motion to suppress. So I believe that those three things should have also been considered. And with that, unless there's any other questions, we'll see. I don't have anything more.  Thank you. May it please the Court. Tim Tatarka of the District of Montana on behalf of the United States. I'll start with the second and successive question. I do think just as an opening point, of course, this Court can affirm on any ground supported by the record. The Court can address the fact that any amendment would be futile on the merits, regardless of whether it was second or successive. But I do disagree with my colleague as to whether or not there was procedural error at all here. Why? Because whether this was considered a second and successive petition or it was considered a Rule 15 motion, it was not in order in either case. So Bannister makes clear that a Rule 59e motion does suspend the finality of judgment with respect to the claims that were raised in the first petition. And I would recommend the Court's attention at page 516 of Bannister. The Court clearly says that that is tied only to the claims that are at issue. And I want to be clear what happened in this case. Mr. Gordon filed a – he had a full adjudication of his claims and a judgment. He filed a Rule 59e motion addressing those claims. Then he separately filed an amendment – a new claim unrelated to those claims. There is nothing in Bannister that indicates that that petition filed after judgment of the first 2255 is not a second and successive petition. Again, if the Court had considered it a Rule 15 motion, a motion to amend, that would have been out of order under this Court's Lindar case, which was cited in our briefs, which says that once judgment is entered, a Rule 15 motion isn't in order unless and until the Rule 59 – a Rule 59e or a Rule 60 motion is granted. So it isn't a matter simply of futility. It's a matter of the fact that the Rule 15 motion would be out of order. And so there is no opportunity to amend at that point. I assume the AEDPA statute had run. Otherwise, if it were – if they were trying to relate back to the filing of the – Yes. Oh, yes. To the filing of the original petition. That it was over a year? Yeah. Yes, I'm 90 percent sure of that. And so, again, I think this isn't a case where the Court needs to go down this road. This would have been futile – or not just futile, but out of order, and considering it as a second and successive petition was appropriate. Moving to the – unless there's any more questions on that, I would move to the original petition – the issues with the original petition. And as Mr. Ness, who is always a model of candor to the Court, acknowledges here, this Court's precedent is that difference has to be excessive. And there's good reason for that. And I'll point out just two quick examples from this case. The PSR in this case calculated Mr. Gordon's offense category at 24. Trial counsel effectively argued that that should be against one of the enhancements, and he ended up with a final offense category of 20. That's a difference of three years in terms of guideline range right there. I would also point out that – and we note this in our brief on page 30 – that when the prosecutor and defense counsel were discussing this issue, they were looking at him as a criminal history category of five. By the time that he got to the time of the PSR, the criminal history included the crimes that he had committed after this offense. And so he moved from a category five to a category six. Again, it would be, as this Court said in Turner, it would be inappropriate to ask counsel to have a crystal ball when there are so many things in play when it comes to sentencing. And that is sufficient grounds for the Court to affirm. I think the Court can affirm on prejudice as well, because the question for prejudice at the plea stage is, can the defendant show that he would have accepted the plea but for the advice? And here, both because we know it was only the advisory guideline, and even if you take Gordon at face value, he claims that it was just the advisory guideline. He doesn't claim that he was told that he couldn't be sentenced to more than that amount. And there's nothing in the record that indicates that he would accept the plea offer that was actually offered, which was not 24 months. There's no evidence in the record that he was ever offered a plea of 24 months. We have the plea. It's at supplemental excerpts of the record, page 211. I would also point out, with respect to prejudice, that – And that was the one where the district court said there isn't a 21 anywhere in the guidelines? Yeah, there's not a 20 – no guideline range that was 20 to 24 months. And I would also point out that – and this is at supplemental excerpts of the record, page 11 – Mr. Gordon maintains his innocence, and he claims that he would have accepted an Alford plea, but that was, again, not the plea that was offered. So, again, he can't show that he would have accepted the plea that was offered. So he fails on prejudice as well, although I would acknowledge that the deficient performance is the easier way that the court can get to that answer. Finally, with respect to the Browning issue, I would just say that we think that the court accurately – this court captured the COA at the appropriate level of generality, and that those other ineffective assistance counsel claims represent a different phase of the trial. And we know that because, again, the question of prejudice is entirely different, right? For a claim with respect to the plea colloquy, the prejudice that you have to show is that he would have accepted the plea. But for the advice, that just doesn't intersect with the question of whether or not, for example, he filed a Rule 29 motion. If the court has no further questions, I'm happy to rest on our brace. Thank you very much. Thanks, counsel. Thank you, and I'll say the same thing unless the court has any further questions. Thank you both. Safe travels back to Montana. Thank you. Thank you for making the trip. Yeah. That case will now be submitted. And you know we have space here if you need to wait to work while you're waiting for your plane. Yeah. The court security officer will show you where it is. So I thank counsel for their excellent arguments and the court case. Well, you can stay here all day if you want. It's basically designed for counsel from out of town, so they can. They just. Okay. To finish my sentence, we thank counsel for the excellent arguments. And you will hear from us in due course. Okay, so travel safely. Court is now adjourned. All rise.
judges: GOULD, TALLMAN, CHRISTEN